1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  JOY AND DANTE GUINTO,
    individuals,
12                                            NO. CIV. S-11-372 LKK/GGH

13          Plaintiffs,

14      v.

15  WELLS FARGO BANK, a National
    Association; and DOES 1                        O R D E R
16  through 50, inclusive,

17          Defendants.

18  _____/

19                              **<u>INTRODUCTION</u>**

20      This case is one more of the many cases arising from a home

21  foreclosure.  According to the First Amended Complaint, defendant

22  Wells Fargo Bank violated the Truth in Lending Act, 15 U.S.C.

23  §§ 1601, <u>et seq.</u>, in connection with two loans it extended to

24  plaintiffs.  Those loans were secured by plaintiffs' property,

25  and eventually went into default.  The property was subsequently

26  foreclosed upon and sold at auction.

                                    1

1   The Truth in Lending Act ("TILA" or "the Act"), was enacted
2   "to assure a meaningful disclosure of credit terms so that the
3   consumer will be able to compare more readily the various credit
4   terms available to him and avoid the uninformed use of
5   credit ...."  15 U.S.C. § 1601(a).  The Federal Reserve Board is
6   charged with implementing the Act.  15 U.S.C. § 1604(a);
7   Household Credit Services, Inc. V. Pfenning, 541 U.S. 232 (2004).
8   The Board has done so through rules promulgated as
9   "Regulation Z," 12 C.F.R. Part 226, setting forth specific
10  disclosures that must be made in credit transactions.  Hauk v. JP
11  Morgan Chase Bank USA, 552 F.3d 1114, 1118 (9th Cir. 2009) ("TILA
12  entrusts the Federal Reserve Board with implementation of the
13  Act, and the agency has imposed 'even more precise' disclosure
14  requirements via Regulation Z").

15  For the reasons set forth below, the court will dismiss the
16  TILA claim because: (i) the claim for damages is barred by the
17  one-year limitations period set forth in 15 U.S.C. § 1640(e); and
18  (ii) the claim for rescission is barred by the three-year statute
19  of repose set forth in 15 U.S.C. § 1635(f).  With no federal
20  claims remaining, the court will issue an Order To Show Cause why
21  the state claims should not be remanded to state court pursuant
22  to 28 U.S.C. § 1367(c)(3).

23                          **I. BACKGROUND**
24  **A.    Factual Background**
25  As part of its motion to dismiss, defendant submitted a
26  request for judicial notice pursuant to Fed. R. Evid. 201,

2

1 containing eleven (11) exhibits.  See Dkt. No. 18 (referring back

2 to the original Request for Judicial Notice, Dkt. No. 10).

3 Defendant accordingly asks the court to look beyond the

4 complaint's allegations.

5    A court may "'take judicial notice of matters of public

6 record outside the pleadings,'" and consider them for purposes of

7 the motion to dismiss.[1]  Mir v. Little Co. of Mary Hosp.,

8 844 F.2d 646, 649 (9th Cir. 1988), quoting MGIC Indem. Corp. v.

9 Weisman, 803 F.2d 500, 504 (9th Cir. 1986).  The matters

10 considered should be "generally known," or "capable of accurate

11 and ready determination by resort to sources whose accuracy

12 cannot reasonably be questioned."  Fed. R. Evid. 201(f); U.S. v.

13 Camp, 723 F.2d 741, 744 (9th Cir. 1984) (taking judicial notice

14 of a public record, "verifiable with certainty").

15    Having reviewed the exhibits, the court takes judicial

16 notice of the following: **(i)** Exhibit A (Dkt. No. 10-1), which

17 includes a Deed of Trust securing a $555,000 adjustable rate loan

18 from Wells Fargo Bank to the plaintiffs, executed October 24,

19 2005; **(ii)** Exhibit B (Dkt. No. 10-3), which includes a Deed of

20 Trust (With Future Advance Clause), securing a $111,000 loan (or

21 line of credit) from Wells Fargo Bank to plaintiffs, executed

22 January 20, 2006; and **(iii)** Exhibit C (Dkt. No. 10-44), which

23 _____

24        [1] Indeed, in a Rule 12(b)(6) motion, the court may reject
   allegations of the complaint that contradict matters properly
25 subject to judicial notice or by exhibit.  Sprewell v. Golden
   State Warriors, 266 F.3d 979 (9th Cir. 2001), citing Mullis v.
26 United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987).

1  includes two documents, each entitled "Notice of Default and

2  Election To Sell Under Deed of Trust," in respect to the two

3  above-referenced loans, dated September 10, 2009.

4       The documents in these exhibits purport to be recorded in

5  the official records of Solano County.  Plaintiffs have not

6  disputed that the documents are what defendant says they are,

7  that they are authentic, or that Exhibits A and B were signed by

8  plaintiffs.  See Daniels-Hall v. National Educ. Ass'n, 629 F.3d

9  992, 998-999 (9th Cir. 2010) (taking judicial notice where

10  neither party disputed the accuracy of the information).

11  Defendant's remaining exhibits are not necessary to the court's

12  decision and are not further considered.

13                1.    The Loans at Issue

14       On or about October 24, 2005, Wells Fargo Bank extended a

15  $555,000 variable rate refinancing loan (the "Primary Loan") to

16  plaintiffs.  First Amended Complaint ("FAC") ¶ 28 & Exh. A (Dkt.

17  No. 13);[2] RfJN Exh. A.  The loan was secured by a Deed of Trust

18  against plaintiffs' home ("the property").  RfJN Exh. A.  This

19  loan was made after a Wells Fargo representative contacted

20  plaintiffs about extending this loan to them.  FAC ¶ 34.  The

21  representative indicated that plaintiffs were properly qualified

22  for the loan, FAC ¶ 17, even though Wells Fargo did not verify

23

24

25  _____

26       [2] Plaintiff has attached a "Deeds History" to the
     complaint, as permitted by Fed. R. Civ. P. 10(c).

                                   4

plaintiffs' financial situation.[3]  FAC ¶ 35.  Instead, Wells

Fargo "qualified" plaintiffs "with disregard to the obvious

[financial] limitations of the Plaintiffs," including their

limited equity in the home, their age, expected income and

obligations and employment status.[4]  FAC ¶ 25.

In February 2006, plaintiffs took out an additional $111,000

loan ("Home Equity Line of Credit") from Wells Fargo, also

secured by a Deed of Trust against their home (the "Secondary

Loan").[5]  FAC ¶¶ 30 & Exh. A; RfJN Exh. B.

The Primary Loan carried an initial interest rate of 5.625%,

which lasted for five years.  RfJN Exh. A.  Thereafter the rate

could change every twelve (12) months.  FAC ¶ 28; RfJN Exh. A.

The Wells Fargo representative promised plaintiffs that they

could refinance the note in five years "with no problems."  FAC

¶ 34.

In extending both loans, Wells Fargo failed to clearly and

conspicuously make the following disclosures: (1) "how much and

how soon the interest rate and monthly payment would increase

---

[3] For purposes of this Rule 12(b)(6) motion only, the court will describe the allegations of the complaint assuming them to be true.

[4] In certain circumstances, Regulation Z prohibits lenders from extending credit "without regard to the consumer's repayment ability as of consummation ...."  12 C.F.R. §§ 226.34(a) & 226.35(b)(1).

[5] The complaint refers to the loans collectively as the Subject Loan, with an outstanding balance of $667,000.

5

after the teaser rate expired;"[6] (2) "whether stated monthly payments included amounts due for insurance and taxes;"[7] and (3) "closing costs and fees."[8]  FAC ¶ 19.  Wells Fargo failed entirely to disclose "the true costs and risks associated with refinancing after the interest rate adjusted."[9]  FAC ¶ 19.

   **2.   Subsequent Events**

   After the loan was extended, plaintiffs' loan payments were not properly credited to their account.[10]  At some unspecified point, plaintiffs suffered a "financial hardship," and stopped making payments on the loan.  FAC ¶ 36.  In August 2008, plaintiffs applied to Wells Fargo for a "loan modification."  FAC ¶ 40.  Plaintiffs applied again in February 2009, this time using a "professional intermediary."  FAC ¶ 43.  In late 2009, Wells Fargo "officially denied" plaintiffs a loan modification.  FAC ¶ 42.  "[R]oughly five years" after obtaining the loans, plaintiffs talked to defendant's representative about

///

---

   [6] Regulation Z requires full disclosure – including a specific format for the disclosure – of the circumstances under which the rate could change.  12 C.F.R. § 226.18(s).

   [7] Regulation Z requires disclosure of the amount financed, and an itemization of that amount.  12 C.F.R. § 226.18(b) & (c).

   [8] Regulation Z requires disclosure of all non-exempt finance charges.  12 C.F.R. § 226.18(d).

   [9] Regulation Z sets forth the required interest rate disclosures for variable rate loans.  12 C.F.R. § 226.19(b).

   [10] Regulation Z prohibits the failure to timely credit the borrower's payments to the loan account, 12 C.F.R. § 226.36(c)(i).

1 refinancing.  FAC ¶ 38.  Defendant's representative "flatly

2 refused to refinance."  FAC ¶ 38.

3     On or about September 10, 2009, Notices of Default were

4 recorded on the property.  FAC ¶ 44.  Each Notice of Default

5 stated that the properties would be sold to satisfy the loan

6 obligations.  RfJN Exhibit C.  On or about December 11, 2009, "a

7 Notice of Trustee's Sale was recorded in the office of [the]

8 Solano County Recorder" in respect to the property.  FAC ¶ 45.

9 The Notice stated the Trustee's intention "to sell the Subject

10 Property at public auction" on August 6, 2010.  <u>Id.</u>

11     In early 2010, plaintiffs apparently made another

12 application for a loan modification, which was denied in July

13 2010.  FAC ¶¶ 46 & 47.  On August 5, 2010, plaintiffs filed a

14 Chapter 13 bankruptcy petition.  FAC ¶ 50.  The sale nevertheless

15 proceeded on August 6, 2010, the property was sold to US Bank

16 National Association, and that entity held title to the property

17 as of the date the FAC was filed.[11]  FAC ¶ 51-53.

18 **B.    Procedural History**

19     Plaintiffs initially filed suit in state court on

20 December 6, 2010, almost five (5) years after they obtained the

21 last loan from Wells Fargo on which the lawsuit is based.  The

22 complaint asserted a federal Truth in Lending Act claim, and

23 state law claims against Wells Fargo Bank ("Wells Fargo"),

24

25     [11] Defendant has submitted documents in its Request for
Judicial Notice which it says disproves these last allegations.
It is not necessary to resolve this issue here, and the court

26 does not do so.

1  JPMorgan Chase Bank and Bank of America.  JPMorgan Chase Bank was

2  dismissed without prejudice in the state court on February 7,

3  2011.

4       On February 9, 2011, Wells Fargo removed the case to federal

5  court, pursuant to 28 U.S.C. § 1441(b).  On March 17, 2011,

6  plaintiffs filed their First Amended Complaint in this court,

7  which named only Wells Fargo as a defendant.[12]  Wells Fargo moved

8  to dismiss the First Amended Complaint on March 31, 2011.

9       Among other bases for dismissal, Wells Fargo asserts that

10  the TILA damages claim was barred by the applicable one-year

11  statute of limitations set forth at 15 U.S.C. § 1640(e), and that

12  the rescission claim was barred by the three-year period set

13  forth at 15 U.S.C. § 1635(f).  Plaintiffs argue that equitable

14  tolling prevents the complaint from being time-barred.

15                           **II. ANALYSIS**

16       The Truth in Lending Act provides a private right of action

17  for damages against a creditor "who fails to comply" with any of

18  its requirements.  15 U.S.C. § 1640(a).  It also provides a

19  rescission remedy in some circumstances.  15 U.S.C. § 1635(f).

20  ///

21  ///

22  _____

23       [12] Plaintiffs also allege claims under the California
    Business and Professions Code (Section 17200, et seq.), as well
24  as what appear to be state law claims for fraud, breach of the
    implied covenant of good faith and fair dealing, conversion,
25  breach of fiduciary duty, breach of loan contracts, negligence,
    predatory lending, misrepresentation, wrongful disclosure, quiet
26  title, and declaratory relief.

1    However, the Act also imposes a one year statute of

2  limitations for civil damages claims.  15 U.S.C. § 1640(e).[13]

3  The limitations period "runs from the date of consummation of the

4  transaction."  <u>King v. California</u>, 784 F.2d 910, 915 (9th Cir.

5  1986).  And it creates a three-year statute of repose for the

6  rescission remedy.  15 U.S.C. § 1635(f).[14]

7  **A.    Failure To State a Claim**

8    Defendant half-heartedly argues that plaintiffs have failed

9  to state a claim for relief under TILA, stating: "it is wholly

10 inadequate for the Guintos to allege merely that they 'relied on

11 statements by the Defendants to their detriment,'" and noting

12 that TILA is a "'complex law with different kinds of disclosure

13 requirements.'"  It is true that the First Amended Complaint is

14 not a model of clear and concise pleading.  To the contrary, the

15 complaint scatters allegations throughout its "Factual" section

16 with little apparent concern for chronology or clarity.

17 Plaintiffs then incorporate all of these allegations wholesale

18 into to TILA claim, without setting forth which facts apply to

19 the TILA claim, nor which parts of TILA are implicated by those

20 allegations.

21 ///

22 _____

23     [13] "Any action under this section may be brought ... within
   one year from the date of the occurrence of the violation."
24 15 U.S.C. § 1640.

25     [14] "An obligor's right of rescission shall expire three
   years after the date of consummation of the transaction."
26 15 U.S.C. § 1635.

1    It is doubtful that this "Where's Waldo?" manner of pleading

2  could satisfy the "short and plain statement" requirement of

3  Fed. R. Civ. P. 8(a).  However, the one thing about the complaint

4  that is plain and clear on its face, is that it was filed nearly

5  five years after the facts alleged took place.  If the complaint

6  is in fact time-barred, judicial economy counsels against

7  requiring plaintiff to plead more sensibly, or hunting down the

8  relevant allegations of the complaint and matching them up to

9  relevant TILA provisions.

10 **B.   The TILA Claims Are Time-Barred**

11      **1.   Standard for a Motion to Dismiss Based on the Statute**

12          **of Limitations**

13      A claim may be dismissed under Fed. R. Civ. P. 12(b)(6) on

14      the ground that it is barred by the applicable statute of

15      limitations only when "the running of the statute is

16      apparent on the face of the complaint."  Huynh v. Chase

17      Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006).

18 Von Saher v. Norton Simon Museum of Art, 592 F.3d 954, 969 (9th

19 Cir. 2010).

20      In making the above determinations, the court considers

21 the complaint "in its entirety," as well as "documents

22 incorporated into the complaint by reference, and matters of

23 which a court may take judicial notice."  TellLabs, Inc. v. Makor

24 Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007).

25   Because the statute of limitations is an affirmative

26 defense, however, its invocation in the context of a motion to

1  dismiss raises specific concerns, especially where, as here, the

2  plaintiff raises an equitable tolling argument.  Champlaie v. BAC

3  Home Loans Servicing, LP, 706 F. Supp.2d 1029, 1052-1053 (E.D.

4  Cal. 2009).  If the face of the complaint demonstrates that the

5  limitations period has run, but that period is subject to

6  equitable tolling, a dismissal motion generally cannot be

7  granted.  "Generally, the applicability of equitable tolling

8  depends on matters outside the pleadings, so it is rarely

9  appropriate to grant a Rule 12(b)(6) motion to dismiss ... if

10  equitable tolling is at issue."  Huynh v. Chase Manhattan Bank,

11  465 F.3d 992, 1003-04 (9th Cir. 2006) (citing Supermail Cargo,

12  Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995)).

13  Indeed, the motion must be denied if "the complaint, liberally

14  construed in light of our 'notice pleading' system, adequately

15  alleges facts showing the potential applicability of the

16  equitable tolling doctrine."  Cervantes v. City of San Diego,

17  5 F.3d 1273, 1277 (9th Cir. 1993); see also, Morales v. City of

18  Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000).[15]

19  _____

20         [15] Because equitable tolling turns on matters outside of the
   pleadings, the Supreme Court's recent decisions in Bell Atlantic
21  Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal,
   556 U.S. ___, 129 S. Ct. 1937 (2009) which concerned the
22  requirements of Fed. R. Civ. P. 8, do not provide a reason to
   revisit this rule.  Although the Ninth Circuit has not discussed
23  the rule since Twombly was decided, this and other courts have
   continued to follow it.  See, e.g., Champlaie, 706 F. Supp.2d at
24  1052-53; Mendoza v. Wilmington Finance, 2011 WL 2182914 at *3
   (N.D. Cal. June 6, 2011); Wende v. Countrywide Home Loans, Inc.
25  2011 WL 1002193 at *3 (S.D. Cal. March 21, 2011); Nava v.
   VirtualBank, 2008 WL 2873406, 2008 U.S. Dist. LEXIS 72819
26  (E.D. Cal. July 16, 2008) (Damrell, J).

1    **1.    The Lawsuit Was Filed Five Years After the Alleged**

2         **Violations Occurred.**

3         According to the complaint and matters subject to Judicial

4    Notice, defendants extended loans to plaintiffs no later than

5    October 24, 2005 and January or February 2006.  FAC ¶ 28 (Primary

6    Loan); Exhibit B (Dkt No. 10-3) (Secondary Loan).  Plaintiffs

7    first filed suit in state court in December 2010, nearly five (5)

8    years after the second loan was extended, and well outside the

9    limitations period.

10        Plaintiff argues that the complaint is not time-barred

11   because the "ramifications" of defendant's alleged TILA violation

12   – the plaintiff's alleged loss of their home through a Trustee

13   Sale – did not occur until August 6, 2010, less than one year

14   before the complaint was filed.  This argument fails because the

15   one-year TILA limitations period commences on the date of the

16   violation.  15 U.S.C. 1640(e).  Plaintiffs cite no authority, and

17   the court is aware of none, for the proposition that the

18   limitations period commences on the date of the "final

19   ramification" of a TILA violation.

20        Unless the commencement of the limitations period can be

21   suspended or "tolled" until December 2009 therefore, the TILA

22   claims are barred by the statute of limitations.

23        **2.    Equitable Tolling of the TILA One-Year Limitations**

24        **Period.**

25        The Section 1640(e) one-year limitations period is subject

26   to "equitable tolling" in appropriate circumstances.  <u>King v.</u>

12

1 California, 784 F.2d at 915.  This tolling is appropriate where
2 the plaintiff had an "excusable ignorance" of the limitations
3 period, and no prejudice will result to defendant.  See Naton v.
4 Bank of California, 649 F.2d 691 (9th Cir. 1981).  When equitable
5 tolling applies, the limitations period is suspended "until the
6 borrower discovers or had reasonable opportunity to discover the
7 fraud or nondisclosures that form the basis of the TILA action."
8 King v. California, 784 F.2d at 915; see also, Hubbard v.
9 Fidelity Federal Bank, 91 F.3d 75, 79 (9th Cir. 1996) (rejecting
10 tolling argument because "nothing prevented Hubbard from
11 comparing the loan contract, Fidelity's initial disclosures, and
12 TILA's statutory and regulatory requirements").

13      The Ninth Circuit has held (in non-TILA cases) that
14 dismissal was appropriate where "it [was] clear that [plaintiffs]
15 have had the information necessary to bring suit ... for many
16 years," and plaintiffs did not argue that "extraordinary
17 circumstances beyond [their] control made it impossible to file
18 the claims on time."  Lien Huynh, 465 F.3d at 1004.  Conversely,
19 dismissal was inappropriate where plaintiff alleged both "that it
20 did not discover" the defendant's alleged wrongdoing until soon
21 before the claim was filed and that plaintiff's "failure to
22 discover the [wrongdoing] earlier was not due to [plaintiff's]
23 lack of diligence, but rather to the [defendant]'s deliberate
24 failure to provide [plaintiff] with accurate information."
25 Supermail Cargo, 68 F.3d at 1208; see also Cervantes, 5 F.3d at
26 1277 (reversing dismissal).

1    Here, the First Amended Complaint contains no allegations
2 acknowledging the existence of a statute of limitations problem,
3 nor any allegations specifically raising the possibility of
4 equitable tolling.  Nevertheless, plaintiffs' opposition brief
5 argues that the limitations period should be equitably tolled.

6              **a.   Alleged Misrepresentations and failure to credit**
7                     **payments.**

8    The issue of tolling is at least touched upon by two sets of
9 allegations in the complaint, namely the allegations that
10 defendant made misrepresentations to plaintiffs and that
11 defendant failed to properly credit plaintiffs' payments to their
12 account.  The allegations are that defendant's representative
13 "promised that in five years, Plaintiffs could refinance again
14 'with no problems;'" defendant indicated that plaintiffs were
15 qualified for the loan when they were not; defendant made the
16 loan without considering plaintiffs' ability to repay; and
17 defendant didn't credit plaintiffs' payments to their account.

18    Even assuming that each of these allegations is true, they
19 are not supported by any allegations or inferences that
20 plaintiffs did not discover these things despite their due
21 diligence.  To the contrary, the complaint shows that plaintiffs
22 were unable to make their loan payments by 2008.  In this
23 context, due diligence means that plaintiffs were at that point
24 required to investigate to find out why they could no longer
25 afford the loan they were told they were qualified for, and which
26 would be easily refinanced.  And, by September 10, 2010, a Notice

1  of Default was placed on their loan, giving them clear notice

2  that they were behind on their payments.  That would be the time

3  that due diligence required plaintiffs to check to make sure that

4  all their payments had been credited to their account.  Nothing

5  in the complaint, or even their opposition brief, indicates that

6  they ever did so.[16]

7      Finally, there is the representative's promise that

8  plaintiffs could refinance after five years.  Plaintiff's problem

9  here is that they had reason to know that they were not going to

10 get the refinancing, at the latest, when defendant filed a Notice

11 of Default against them in September 2009.[17]  Therefore, even if

12 the statement was a falsehood actionable under TILA,[18] plaintiffs

13 knew it was false more than a year before they filed suit.

14 Through the exercise of due diligence, they would have discovered

15

16      [16]   In other words, if plaintiffs thought they had an
    affordable loan, whose terms they could meet, then they were on
17  notice that they were mistaken – or had been lied to – when, in
    2008, they defaulted on the loan.

18      [17] In fact, if defendant lied to plaintiffs about being able
    to refinance, plaintiffs had all the facts they needed to know
19  it was false in 2009, when they had already defaulted on their
    loan, and they were denied a loan modification.  FAC ¶ 38.
20

21      [18] The complaint does not appear even to allege that the
    promise was false.  According to plaintiffs, the Wells Fargo
22  representative promised that refinancing could occur in five
    years.  Plaintiffs allege that they applied for a loan
23  "modification" after only three years, in 2008, after they were
    already in default.  They also allege that they applied for a
24  refinancing after five years, long after they had stopped making
    their payments.  An alleged statement that plaintiffs would be
25  able to refinance in five years cannot reasonably be construed
    to be a statement that they would be able to get a loan
26  "modification" in three years, or to refinance after five, even
    after they have defaulted on their loan.

1 the alleged TILA violation when they could no longer make the

2 required payments, or when they were forced to apply for a loan

3 modification, or when the modification request was denied, or at

4 the latest, when defendant filed a Notice of Default against

5 their home on September 10, 2009 for failure to make required

6 payments.

7           **b.   New allegations.**

8     Plaintiffs now put forth the following new allegations, none

9 of which can be found in, or inferred from, the complaint: "the

10 Plaintiffs' primary language is Tagalog, and the bank never

11 provided a translator to help explain the financial

12 technicalities of the Subject Loan;"[19] "Earlier discovery of the

13

14           [19] Even if this were alleged in the complaint, it would not
be a basis for tolling the limitations period, at least not as
15 it is asserted here.  Plaintiffs now claim that Tagalog is their
"primary" language, but they fail to assert that they do not
16 understand English.  The case <u>Galindo v. Financo Financial,</u>
<u>Inc.</u>, 2008 WL 4452344 (N.D. Cal. 2008), an unpublished order
17 cited by plaintiffs, does not support their tolling argument.
In <u>Galindo</u>, the borrower could not read the loan documents she
18 had signed, and instead relied on the lender's oral
representation that the loan was at a fixed rate.  It was not
19 until the rate actually changed that the borrower became aware
that she had been deceived, and would have to pay a higher rate
20 than had been disclosed to her.  The borrower filed her TILA
action within one year of realizing that her new rate was not
21 what she had been told it would be.
     In this case, the complaint indicates that plaintiffs'
22 interest rate had not changed by the time plaintiffs stopped
making payments and defaulted.  According to the complaint
23 itself, the plaintiffs' introductory rate would not change for
five (5) years, until October 2010.  The complaint does not
24 allege that the rate changed notwithstanding this provision.
Accordingly, plaintiffs had all the information they needed
25 about how much their payments were, as soon as their first
payment was due, whether or not they could read the loan
26 documents.

1  harm was unreasonable because Plaintiffs were unsophisticated

2  consumers who relied on the expert representation of

3  Defendant;"[20]  "Defendant encouraged borrowers not to worry about

4  most loan terms."[21]  Under the applicable standard, the complaint

5  must be dismissed – given the limitations bar apparent on the

6  face of the complaint – unless the basis for equitable tolling

7  can be discerned from the complaint.  Accordingly, none of these

8  new allegations can save the complaint.

9          **c.   Insufficient allegations**

10     Plaintiffs also recycle in their opposition briefs the

11 following allegations as reasons for tolling the limitations

12 period: "the complaint alleges that Plaintiffs were never given

13 any of the required TILA disclosures;" "Defendant failed to

14 explain and/or disclose in a meaningful manner the terms and

15 conditions of their loan products;" and defendant "provided

16 incomplete or confusing information" about the loans.  These are

---

[20] The assertion is not a basis for tolling the limitations period in any event.  The TILA statute, by its nature, protects unsophisticated borrowers.  Yet, the Congress in its wisdom, knowing that it would cut off unsophisticated borrowers from an otherwise meritorious damages claim, imposed a limitations period of one year.  Plaintiffs, in essence are asking this court to overrule the will of the Congress, and to do so without providing the court with any reason for such an extraordinary action.  The court will not do so.

[21] This also gets plaintiffs nowhere.  This brand-new assertion seems to concede that plaintiffs did receive some disclosures, but indicates that they didn't know about the disclosures they had been given because defendant told them not to look.  There is nothing in the complaint or any case law identified by plaintiffs or known to this court, that indicates that this decision to turn a blind eye was reasonable or sufficed to toll a statutory period of limitations.

1 simply conclusory allegations of TILA violations.  They do not

2 amount to an argument for equitable tolling.[22]

3      **B.   The Three-Year Statute of Repose for Rescission Claims.**

4      TILA provides a right of rescission under certain

5 circumstances, 15 U.S.C. § 1635(a), and allows three years to

6 bring the claim, 15 U.S.C. § 1635(f).  Plaintiffs here seek

7 "rescission," FAC at 26 ¶ 6, but do not specify if they seek it

8 under TILA or under state law.  If they intend to bring it under

9 TILA, they are barred by the three-year statute of repose, 15

10 U.S.C. 1635(f), even if the rescission remedy applies to the

11 types of loans plaintiffs received.[23]  The three-year period is a

12 statute of repose, and not subject to equitable tolling.  After

13 the three-year period, the right of rescission itself is

14 completely extinguished, and the district court is divested of

15 jurisdiction over the claim.  Miquel v. Country Funding Corp.,

16

17      [22] In addition, they are at least partly belied by the Trust
Deeds themselves (of which this court has taken judicial
18 notice), both of which bear plaintiffs' signatures, and both of
which clearly set forth at least some of the disclosures which
19 plaintiffs say they never received.

20      [23] It appears that the right of rescission does apply to the
loans at issue here.  It is true that rescission does not extend
21 to "residential mortgage transactions," 15 U.S.C. § 1635(e)(1),
Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp.2d at
22 1042.  However, a "residential mortgage transaction" is one for
the "acquisition or initial construction of a home."  15 U.S.C.
23 § 1602(w).  The $555,000 loan at issue here is alleged to be a
"refinancing" by Wells Fargo of a World Savings loan, not a loan
24 to buy or build a home.  The $111,000 loan is alleged to be a
home equity loan on that same property, and thus not a loan to
25 buy or build a home.  Since there is no "residential mortgage
transaction" here, the rescission remedy appears to be
26 available.

1  309 F.3d 1161, 1164 -1165 (9th Cir. 2002), citing <u>Beach v. Ocwen</u>

2  <u>Federal Bank</u>, 523 U.S. 410 (1998).

3      Because the lawsuit here was first filed well after the

4  three-year period, there is no existing claim for rescission

5  under TILA.

6                          **III. CONCLUSION**

7      For the reasons set forth above, the Truth in Lending claims

8  are dismissed for failure to state a claim.  The damages claim is

9  barred by the one-year statute of limitations set forth at

10 15 U.S.C. § 1640(e), and the rescission claim is barred by the

11 three-year statute of repose set forth at 15 U.S.C. § 1635(f).

12     Plaintiffs are Ordered to Show Cause why this court should

13 not decline to exercise supplemental jurisdiction over their

14 state law claims, pursuant to 28 U.S.C.A. § 1367(c)(3).[24]

15 DATED:   June 30, 2011.

16

17                          LAWRENCE K. KARLTON
                            SENIOR JUDGE
18                          UNITED STATES DISTRICT COURT

19

20

21

22

23     [24] Defendant Wells Fargo has asserted diversity jurisdiction
   as an "alternative" basis for removal, citing 28 U.S.C. §§ 1332
24 and 1441(b), and stating that it is a citizen of South Dakota.
   Dkt. No. 1 ("Notice of Removal").  In their responses to the
25 OSC, the parties should address whether diversity jurisdiction
   exists in light of 28 U.S.C. § 1348 and <u>Wachovia Bank v.</u>
26 <u>Schmidt</u>, 546 U.S. 303 (2006).

                                19